UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VICKIE GLANZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15 C 6337 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| THE STATE OF ILLINOIS, TROOPER ) | |
| EHLERS STAR #6131, AND AS-YET ) | |
| UNKNOWN ILLINOIS STATE TROOPERS, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiff Vicki Glanz alleges that Illinois State Trooper Christopher Ehlers violated 42 U.S.C. § 1983 by using excessive force to pull her out of her car and handcuff her after she refused to exit her car during a speeding stop. Defendants Ehlers and the State of Illinois move for summary judgment [51]. Because the State of Illinois is immune from claims seeking monetary damages under the Eleventh Amendment, the Court grants summary judgment to the State. But the Court denies summary judgment to Ehlers because an issue of fact precludes granting Ehlers qualified immunity on Glanz's excessive force claim.

## BACKGROUND[1]

While Glanz drove in Harvey, Illinois, an hour after midnight, Ehlers, in his squad car, saw her and believed she was speeding. Ehlers pulled Glanz over on the street, stepped out of

---

[1] The facts in this section are derived from the Joint Statement of Undisputed Material Facts. The Court has considered the supporting exhibits and included in this background section only those portions of the statements that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment. The parties agree that most facts in the Joint Statement of Undisputed Material Facts derive from a videotape of the incident they agree is not doctored or altered in any way nor depicts anything different than what actually happened. To the extent possible, the Court relies on the facts describing the videotaped portion of Glanz and Ehler's encounter "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). All other facts are taken in the light most favorable to Glanz, the non-movant.

his car, and approached hers. His squad car's videorecording system captured video and audio of the traffic stop. Ehlers questioned Glanz about her speeding and if she had consumed alcohol. After he shined his light in Glanz's face and tracked her eyes to attempt a field sobriety test, Ehlers asked Glanz to step out of her car. Glanz refused. The two went back and forth–Glanz continued to refuse. Ehlers opened Glanz's door and removed the car key from the ignition. He did not see her reach for anything, and after she said she was going to make a phone call, he did not believe she had a gun when she reached for her cellular phone.

Ehlers then told Glanz she was under arrest for resisting arrest and locked a handcuff bracelet on Glanz's left arm. Ehlers unbuckled Glanz's seatbelt and "attempted to pull [Glanz] out of the vehicle, using the handcuff as leverage." Doc. 53 ¶ 32. Although Ehlers did not remove Glanz from the car on the first pull, he pulled her out on the second attempt. Glanz tried to move back towards her seat. Ehlers then used "an 'iron wrist takedown' and an 'arm bar takedown' to take [Glanz] onto the ground" on the street. *Id.* ¶ 37. Glanz began moving back toward her car, and Ehlers then kneeled on her and asked for her other arm. For approximately one minute, Ehlers attempted to handcuff Glanz while he told her to "stop resisting." *Id.* ¶ 40. A pedestrian walked by the scene, saw the two, kneeled close to Glanz, and told her to relax as Ehlers continued to try to handcuff her. An off-duty City of Harvey police officer, who had been driving by the scene, left his car, replaced the pedestrian, and told Glanz to "relax" and "stop resisting." *Id.* ¶ 44. Approximately three minutes and thirty-five seconds after Ehlers pulled Glanz out of her car, he completed handcuffing her other wrist and pulled her off the ground.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

2

To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

Glanz, in her only remaining claim, alleges that both Defendants are liable for the constitutional violation that occurred when Ehlers used excessive force to remove her from her car and handcuff her. Defendants present separate arguments as to why the Court should grant them summary judgment: the State of Illinois argues that it is immune from suit under the Eleventh Amendment, and Ehlers argues that he is protected by qualified immunity. The Court addresses each argument in turn.

**I.      Sovereign Immunity**

The Eleventh Amendment bars suits brought against a State in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). Sovereign immunity does not apply where the State consents to suit or federal legislation

abrogates the immunity pursuant to a constitutional grant of authority. *Tennessee v. Lane*, 541 U.S. 509, 517, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004). Section 1983 does not abrogate state sovereign immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 58, 109 S. Ct. 2304, 2306, 105 L. Ed. 2d 45 (1989). The State of Illinois has consented to suit exclusively in the Illinois Court of Claims, *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) ("The Illinois State Lawsuit Immunity Act stipulates that tort suits against the State must be pursued in the Illinois Court of Claims."), but Glanz argues that the State of Illinois consented to the suit here by indemnifying its employee Ehlers, by remaining "a Defendant since inception of this case," and by ordering its Attorney General's office to defend Ehlers, Doc. 55 at 2–3. These arguments fail. *See Stoner v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 50 F.3d 481, 482–83 (7th Cir. 1995) ("Case law in this Circuit has rejected the notion, advanced by Stoner, that a state which chooses to indemnify its employees for damages threatens its Eleventh Amendment immunity from suit."); *Young v. Dart*, No. 06 C 552, 2009 WL 2986109, at *3 (N.D. Ill. Sept. 15, 2009) (noting that a defendant with an Eleventh Amendment defense may raise the issue as late as at summary judgment); *Goka v. Bobbitt*, 625 F. Supp. 319, 323 (N.D. Ill. 1985) (noting that even if state employees qualified for indemnification and defense by the State under indemnification statute, "the theory that such indemnity makes the state the real party of interest in a suit against its employees is flawed and has been rejected by several courts."). The State of Illinois' failure to answer the complaint does nothing to change the Court's analysis. *Higgins v. Mississippi*, 217 F.3d 951, 954 (7th Cir. 2000) (noting that waiver of sovereign immunity requires affirmative waiver and holding that district court could address sovereign immunity even on its own initiative where the State of Illinois failed to respond to the plaintiff's § 1983 complaint).

Hearing no further persuasive argument in support of abrogating the State's sovereign immunity, the Court grants summary judgment to the State of Illinois.

## II. Qualified Immunity

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, --- U.S. ----, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017) (citation omitted) (internal quotation marks omitted). "[T]wo central questions must be addressed in the course of determining whether qualified immunity is available: whether the plaintiff has alleged a deprivation of a constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (citation omitted). The Fourth Amendment's prohibition on unreasonable seizures limits an officer's use of force during an arrest, and the Court reviews the totality of the circumstances and "engage[s] in 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Weinmann v. McClone*, 787 F.3d 444, 448 (7th Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). When balancing these competing factors, the Court considers "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396). The Court evaluates reasonableness from the "perspective of a reasonable officer on the scene" and not with "20/20" hindsight. *Graham*, 490 U.S. at 396. "An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably

5

necessary to effectuate the arrest." *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012).

Here, balancing the competing factors and reviewing the totality of the circumstances requires factual determinations that preclude the Court from ruling as a matter of law on the constitutionality of Ehlers' actions. The facts before the Court and the videotape of the arrest create rival interpretations of the incident. Glanz alleges that the force Ehlers used was unreasonable in light of the totality of the circumstances because she claims she posed no threat, that Ehlers escalated the situation when he pulled her out of her car, and that once she was on the ground, he continued to use objectively unreasonable force. Ehlers, on the other hand, argues that his actions were entirely proportionate to the situation, that Glanz actively resisted arrest, and that any objective police officer would have done the same thing he did.

Although the videotape documents much of the incident in question, it does not resolve the competing interpretations of what happened during the stop and arrest. *See Monetti v. City of Seattle*, 875 F. Supp. 2d 1221, 1228 (W.D. Wash. 2012) ("*Scott v. Harris* is distinguishable because the video in this case did not capture the entire incident and is susceptible to differing interpretations. The Court finds that a reasonable jury could find that the video actually supports the plaintiff's theory that the threat to officer and bystander safety was actually quite low, and that the plaintiff was not a flight risk."). For example, the parties and the videotape provide little information about what Glanz did when she was in her car. And after Ehlers pulled Glanz out of the car, the videotape creates fact issues regarding the level of Glanz's resistance and the amount of force that Ehlers used. Because Glanz's interpretation reasonably lays out a constitutional violation and because Ehlers' version does not, the competing interpretations of the incident prevent the Court from accurately judging the totality of the circumstances and require the issue

to be submitted to a jury. *See Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010) ("[S]ummary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations.").

Because there are jury questions about the nature of Glanz's resistance and the degree of Ehler's use of force, the Court cannot resolve the qualified immunity question in favor of Ehlers. *See Weinmann*, 787 F.3d at 451 ("The existence of a factual dispute about the circumstances surrounding McClone's decision to fire on Jerome precludes a ruling on qualified immunity at this point."). At least one reasonable interpretation of the facts before the Court would mean that Ehlers' use of force was so excessive that he was on notice he was violating the Fourth Amendment. *See Phillips*, 678 F.3d at 528–29 (noting that Seventh Circuit precedent "does not stand for the proposition that an officer may use any amount of force on an unresponsive driver" but instead permits "only 'minimal' force to remove a non-responding intoxicated driver from his car" (citing *Smith v. Ball State Univ.*, 295 F.3d 763, 771 (7th Cir. 2002)); *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 732 (7th Cir. 2013) ("Prior to 2007, it was well-established in this circuit that police officers could not use significant force on nonresisting or passively resisting suspects."); *Boothe v. Wheeling Police Officer Sherman (Star #155)*, 190 F. Supp. 3d 788, 799 (N.D. Ill. 2016) (officer not entitled to qualified immunity for 2012 incident where, in light most favorable to plaintiff, the officer dug his knee into the plaintiff's back for over a minute while she was on the ground and subdued). Therefore the Court denies Defendants' motion for summary judgment as to Ehlers.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for summary judgment [51]. The State of Illinois remains as nominal defendant solely for the purpose of indemnification.

Dated: April 4, 2017

SARA L. ELLIS
United States District Judge